PER CURIAM.
 

 The claimant, Emilio Blaisdell, appeals a final order of the Unemployment Appeals Commission, which upheld the appeals referee’s findings that the claimant was disqualified from receiving unemployment compensation benefits and obligated to repay benefits initially awarded by the claims adjudicator. Claimant contends that the employer’s appeal of the initial
 
 *807
 
 benefits determination was untimely. We agree. Because the appeals referee’s determination that the employer’s appeal was timely is not supported by competent substantial evidence, we reverse the order of the Unemployment Appeals Commission.
 

 On January 3, 2007, the employer, PDQ Internet Auctions LLC, initially responded to claimant’s unemployment claim by stating on a form that the claimant, Emilio Blaisdell, had quit because of a “disagreement w/ manager’s policy.” The unemployment division’s original notice of determination stated that the claimant was discharged by the employer “for instigating conflict on the job” and that “[n]o information has been submitted which substantiates misconduct.” The notice of determination thus awarded the claimant unemployment benefits. The notice further advised that the employer had the right to appeal the decision within twenty days and indicated that the notice was mailed to the employer’s address at 2599 N. Federal Highway in Ft. Lauderdale on February 22, 2007.
 

 On May 24, 2007, well after the appeal time had run, Scott Balsón, the CEO of the employer, wrote to “Unemployment Compensation” and indicated that the claim was fraudulent because claimant had quit his employment. As for his delay in responding, he indicated that, “[t]he timing is unfortunate; however the response to our protest just crossed my desk.” On June 25, 2007 and August 2, 2007, Balsón wrote additional letters to the “Unemployment Compensation Program” again claiming that the claimant had quit his job.
 

 The appeals referee held a telephone hearing on the employer’s appeal on September 17, 2007. Balsón testified that he did not receive the February 22 decision awarding benefits. He said he first learned of the decision when he received an April 12 document, a “UCT1,” that showed the charges to his tax rate record. He immediately called and spoke to a Ms. McCloud. He was told to send a protest letter. He did that in a letter dated May 24. He testified:
 

 I’ve got seven people in a start up business and we’re overwhelmed and I’m- — ■ I’m apologetic if something took three weeks from the time that it was received by us for it to reach my desk, but sometimes, you know, you even get a grace period of a month to pay a bill.
 

 The appeals referee found:
 

 The claimant (sic) did not receive the adverse determination of the claims adjudicator mailed to the employer at its address of record on February 22, 2007. The employer filed its appeal on May 24, 2007, within 20 days of learning of the determination.
 

 Florida Statute section 443.151(4)(b)l provides:
 

 The claimant or any other party entitled to notice of a determination may appeal an adverse determination to an appeals referee within 20 days after the date of mailing of the notice to her or his last known address or, if the notice is not mailed, within 20 days after the date of delivery of the notice.
 

 The statute contains no “good cause” exception.
 
 Pelletier v. State, Unemployment Appeals Comma.,
 
 761 So.2d 413 (Fla. 2d DCA 2000).
 

 The face of the notice of determination indicates that it was mailed to the employer on February 22, 2007. The employer has never disputed that it was mailed on that date, contending only that he never received it. In fact, the appeals referee affirmatively found that the notice was “mailed to the employer at its address of record on February 22, 2007.” Thus, under the express terms of the statute the employer had only until March 14, 2007 to
 
 *808
 
 file its appeal. It is undisputed that the appeal was not filed until May 24, 2007, more than two months late.
 

 In defense of permitting the untimely appeal, the UAC argues that this court should apply the doctrine of equitable tolling, citing
 
 Machules v. Dept. of Admin.,
 
 523 So.2d 1132, 1133 (Fla.1988). However, in that case the court found the equitable tolling doctrine applicable for two reasons: 1) the late filer had been misled or lulled into inaction by the opponent; and 2) the late filer had timely raised the issue, only in the wrong forum.
 
 Id.
 
 at 1134. Neither condition applies in this case. The employer’s excuse, that it was a small company “overwhelmed” with work was insufficient to invoke equitable tolling or any general due process exceptions to the statutory time-frame.
 
 Cf. Holmes v. City of West Palm Beach,
 
 627 So.2d 52 (Fla. 4th DCA 1993) (recognizing judicially created exceptions to the rule and statute in certain individual circumstances, such as when the claimant contends he never received the notice of hearing and notice of determination).
 

 The appeals referee’s finding that “[t]he employer filed its appeal on May 24, 2007, within 20 days of learning of the determination” is not supported by the record. The employer’s CEO admitted that he learned of the determination when he received the April 12 document, a “UCTI,” which showed the charges to his tax rate record. He testified that he immediately contacted Ms. McCloud at the Division and was told to send a protest letter. He did so in a letter dated May 24.
 

 We note that the record does not establish exactly when the employer’s CEO learned of the adverse determination, because it does not show when he received the April 12 UCTI form. However, Florida law’s five-day tolling provisions for service by mail recognize that documents should be received within five days of mailing.
 
 See e.g. Appel v. Florida Dept. of State, Div. of Licensing,
 
 734 So.2d 1180, 1182 (Fla. 2d DCA 1999) (applying five day tolling provision in Florida Administrative Code Rule 28-5.103);
 
 Beacon v. Dept. of Ins., State of Florida,
 
 656 So.2d 197, 198-99 (Fla. 1st DCA 1995) (same). Thus, the employer, who admits receipt of the April 12 UCTI, should have received it by April 17. He testified that he immediately called the division and was told to mail a protest letter. Yet, he waited until May 24 to write his protest letter, some 37 days later. The appeals referee’s finding that the employer filed its appeal “within 20 days of learning of the determination” is thus not supported by the record and his conclusion that the employer’s appeal was timely is erroneous.
 

 Reversed
 
 and
 
 Remanded
 
 to reinstate claimant’s benefits.
 

 WARNER, POLEN, and TAYLOR, JJ., concur.